UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

Jerome Anderson,

              Plaintiff,

      vs.

Sergeant Osborne,
Sergeant Carter,
Sergeant Gordon Perry
Correctional Officer James Hennig,
Correctional Officer M. Ernst,
Correctional Officer Morell,
Correctional Officer Freeman,
Correctional Officer Dillon,
Correctional Officer Suedeker,
Correctional Officer Luis Cabrera
Correctional Officer Christina Lorenzo
Registered Nurse S. Ganet,
Registered Nurse Ching Wang
Doctor Bentivegna,
Recreation Civilian Berstell, and
Commissioner Hearing Officer Eric Gutwein,

                     Defendants

------------------------------------------------------X

**VERIFIED
CIVIL COMPLAINT**

17 - CV - 539 - VB

AMENDED
COMPLAINT  Pro se

JURY TRIAL DEMAND

STATE OF NEW YORK      )
                     ) ss :
COUNTY OF CAYUGA  )

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-6-17

     I, Jerome Anderson, do hereby affirm pursuant to 28 U.S.C. §1746 and federal rules 43 (d) that the following is true and an accurate representation of the facts and that those stated to be based on assumption are believed to be true:

# JURISDICTION AND VENUE

1.     This is a civil rights action authorized by 42 U.S.C. § 1983 to redress constitutional and statutory violations committed under the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 (2)(3) and (4). Furthermore, I seek declaratory relief that is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

2.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred at Green Haven Correctional Facility located in the Southern District of the State of New York.

3.    The matter under controversy arises under the First, Eighth, and Fourteenth Amendments of the United States Constitution. I contend that the defendants unnecessarily and excessively violated my clearly established constitutional rights in a discriminative manner.

## PARTIES TO THE ACTION

4. **NAME OF PLAINTIFF**: Mr. Jerome Anderson  (DIN: 00A0502)
   Current Address         Great Meadow Correctional Facility
                           11739 State Route 22, P.O. Box 51
                           Comstock, New York 12821-0051

5. **NAME OF DEFENDANT**:  Mr. Osborne
        Official Position:  Correctional Sergeant
        Sued in his Official and/or Individual Capacity
        Working Location: Green Haven Correctional Facility
            594 Route 216
            Stormville, New York 12582-0010

6. **NAME OF DEFENDANT**:  Mr. Carter
        Official Position:  Correctional Sergeant
        Sued in his Official and/or Individual Capacity
        Working Location: Green Haven Correctional Facility
            594 Route 216
            Stormville, New York 12582-0010

7. **NAME OF DEFENDANT**:  Mr. G. Perry    – infirmary / return
        Official Position:  Correctional Sergeant
        Sued in his Official and/or Individual Capacity
        Working Location: Green Haven Correctional Facility
            594 Route 216
            Stormville, New York 12582-0010

8. **NAME OF DEFENDANT**:  Mr. James Hennig
        Official Position:  Correctional Officer
        Sued in his Official and/or Individual Capacity
        Working Location: Green Haven Correctional Facility
            594 Route 216
            Stormville, New York 12582-0010

9. **NAME OF DEFENDANT**:  Mr. M. Ernst
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

10. **NAME OF DEFENDANT**:  Mr. Morell
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

11. **NAME OF DEFENDANT**:  Mr. Freeman
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

12. **NAME OF DEFENDANT**:  Mr. Suedeker
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

13. **NAME OF DEFENDANT**:  Mr. Dillon - return
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

14. **NAME OF DEFENDANT**:  Luis Cabrera - return
            Official Position:  Correctional Officer
            Sued in his Official and/or Individual Capacity
            Working Location: Green Haven Correctional Facility
                      594 Route 216
                      Stormville, New York 12582-0010

15. **NAME OF DEFENDANT**:  Christina Lorenzo - return
            Official Position:  Correctional Officer
            Sued in her Official and/or Individual Capacity

Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

16. **NAME OF DEFENDANT**: Ms. S. Ganet
Official Position: Registered Nurse
Sued in her Official and/or Individual Capacity
Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

17. **NAME OF DEFENDANT**: Ching Wang      / return
Official Position: Registered Nurse
Sued in her Official and/or Individual Capacity
Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

18. **NAME OF DEFENDANT**: Mr. Bentivegna (S.H.U.)
Official Position: Doctor
Sued in his Official and/or Individual Capacity
Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

19. **NAME OF DEFENDANT**: Mr. R. Berstell
Official Position: Recreation Civilian (Tier Hearing Assistant)
Sued in his Official and/or Individual Capacity
Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

20. **NAME OF DEFENDANT**: Mr. Eric Gutwein
Official Position: Commissioner's Hearing Officer
Sued in his Official and/or Individual Capacity
Working Location: Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

**At all times relevant to the events described herein, the defendants have
acted and continue to act under the color of state law.**

4

# OTHER ACTIONS IN STATE OR FEDERAL COURTS

21. In 2015, I filed a petition pursuant to Article 78 of the New York State Civil Practice Law and Rules (hereinafter 'Article 78'). This petition was filed in Albany County Court. (Matter of Anderson (00-a-0502) v. Venetozzi [Albany County Index No.: 5172-15])

22. The Article 78 petition was transferred to the Appellate Division, Third Department, as it raised an issue of insufficient evidence, pursuant to CPLR §7804(g).

23. On August 16, 2016, the Attorney General's Office filed a letter to the Clerk of the Court of the Appellate Division, Third Department requesting that the case be dismissed as moot due to the Administrative Reversal (Matter of Anderson (00-a-0502) v. Venetozzi [Appellate Division Docket No.: 5228455])

24. There are no other lawsuits in state or federal court which relate to my imprisonment.

# STATEMENT OF FACTS

25. On March 21, 2015, I received a Tier II Disciplinary Misbehavior report (hereinafter 'Tier II'). As a result of this Tier II disciplinary hearing completed on March 24, 2015, I received the following sanctions: 30 days Keeplock confinement with 15 days suspended for 90 days (to run from March 21st to April 5th), 15 days Loss of Recreation privileges. (The sanction for the loss of recreation privileges ran consecutively to the 15 days keeplock penalty: from April 5 to April 20th.)

26. While at the hearing for this Tier II, an investigator for the Inspector General's Office (hereafter 'I.G.') was interviewing another inmate regarding a complaint filed against a Sergeant. The I.G. investigator approached me and asked me if I knew anything concerning the Sergeant. I gave him a brief statement.

27. On April 11, 2015, at approximately 6:30 P.M., I was in my cell because I was still serving the Loss of Recreation sanction. Correctional Officer (hereinafter 'C.O.') J. Hennig approached my cell and instructed me to get dressed. I asked C.O. Hennig why. He informed me that I was wanted for a Sergeant's Interview. I got dressed and exited my cell. C.O. Henning then escorted me

from E-Block to the 'F & G' Corridor. (At no time during this escort did we go outside.)

28. Upon arrival at the 'F & G' corridor, I observed that Sergeant Osborne was waiting for us. Sergeant Osborne approached and asked me if I had spoken to the I.G. I was not expecting the question and he asked me if I had made a statement to the I.G. approximately two weeks prior. Something in his demeanor struck me as odd. I responded that I respectfully did not want to discuss the matter with him. (The I.G. investigator had assured me that I would not have to talk to any of the facility staff regarding anything I said.)

29. Sergeant Osborne then instructed me to place my hands on the wall. I immediately complied.

30. Once my hands were on the wall, Sergeant Osborne punched me in the face. The force of the punch knocked me off balance and my hands came off the wall as I staggered.

31. Numerous officers began to respond to the area. Upon information and belief, CO Wazinski and CO Coons were part of the response.

32. Sergeant Osborne, C.O. Hennig, and C.O. Ernst were actively assaulting me. After a few seconds of attempting to cover myself, I fell to the floor and tried my best to cover my face with my hands. I was beaten with batons, fists, and elbows. My face was smashed into the floor. I was kicked and stomped on. I was eventually held face down by a number of guards as an unknown officer repeatedly kneed me in my thigh for over a minute. (As a result, of the kneeing to my thigh, I was unable to walk for a week.)

33. During the assault, I distinctively heard Sergeant Carter's voice stating, several times, "No bruises guys, no bruises."

34. Eventually handcuffs were placed on my wrists and I was escorted, upon information and belief, to the facility's Special Housing Unit (S.H.U.) by C.O.'s Freeman, and Morell, as well as Sergeant Carter.

35. While in route from the F & G corridor, C.O.'s Freeman and Morell were punching, kicking, and forcibly poking me with the end of their batons, as well as stomping on my feet. Freeman and Morell would alternate grabbing the handcuffs and in order to violently twist them and tighten them, while the other would assault me. I was repeatedly punched in the back of my head. This torture lasted for the entire route until we arrived at the Special Housing Unit. This all took place in the presence of Sergeant Carter who did nothing to stop the assault.

36. Upon entering the Special Housing Unit, my clothes were removed and Use of Force pictures were taken of my injuries.

37. After the photos were taken, Sergeant Carter, and C.O.'s Freeman and Morell escorted me to the infirmary. As soon as we left the Special Housing Unit Defendants Freeman and Morell continued to assault me as they had done before. They continued to punch, kick and violently poke me with their batons. Once again, this was done in the presence of Sergeant Carter who did nothing to stop the assault.

38. After arriving at the infirmary, I told nurse S. Ganet what had transpired. I informed the nurse that Sergeant Carter, and C.O.'s Freeman and Morrell were assaulting me during the escort to the Special Housing Unit and to the infirmary. I complained of all my injuries and requested to see a doctor. Medical staff then ordered that I be taken to the outside hospital.

39. I was transported to Putnam Hospital via ambulance.

40. Once I arrived at Putnam Hospital, I described to their medical staff what had taken place at the facility.

41. I was given a shot in my thigh and an x-ray of my thigh was taken. My other injuries were ignored (I had complained of injuries to my head, ribs, back, and wrist) but I do not know if my complaints were written down.

42. I was then transported back to the facility via state vehicle (van).

43. Upon entering the facility, the transport officers turned me over to officers Luis Cabrera and Christina Lorenzo. These two officers were to escort me to the facility infirmary (standard protocol for all inmates returning from outside hospitals). I was kept in mechanical restraints consisting of handcuffs, waist chain, and shackles.

44. Officer Dillon approached me and began to assault me in the presence of these two officers, as well as the two transport officers. The officers did nothing to stop the assault nor did they do anything to report the incident. C.O. Dillon repeatedly punched me in the head, neck, and face area. He kicked and elbowed me while the two officers were holding me by my arms. This continued until Luis Cabrera told him, "That's enough. That's enough!" I truly felt that C.O. Dillon was going to kill me.

45. After arriving at the facility infirmary, I saw Sergeant Perry and Nurse C. Wang I immediately complained of C.O. Dillon assaulting me and I requested that a report be made and photos be taken.

46. Sergeant G. Perry responded, "If a convict assaulted me, I hope they do a better job than what's happened to you. The fact that you're still fucking conscious is lucky for you."

47. I was then admitted into the infirmary for three days for observation. I was given Ibuprofen every few hours while I was in the infirmary.

48. After three days, I was moved into the facility's Special Housing Unit.

49. On April 14, 2015, I was issued a Tier III misbehavior report for the incident of April 11, 2015 which charged me with violating Rules 100.11 'Assault on Staff', 104.11 'Violent Conduct', 106.10 'Direct Order', 113.14 'Unauthorized Medication', 107.10 'Physical Interference', 113.15 'Unauthorized Exchange', and 114.10 'Smuggling'.

50. On April 14, 2015, I met with my assigned pre-hearing assistant, R. Berstell. At that time I requested that I be provided with a number of requests. The items I requested were:

    1) Copy of the videotape of the E & F yard prior to the incident,
    2) Copy of the videotape of the corridor in front of E block,
    3) Copy of the videotape from the infirmary during the incident(s),
    4) Copy of the disposition of the Tier II disciplinary hearing completed on March 24, 2015,
    5) The name of the investigator from the Inspector General's Office who was present on March 24, 2015 when I had my Tier II hearing,
    6) The names of the officers that were working in the F & G corridor at approximately 7:00 P.M. on April 11, 2015,
    7) A copy of the log book of the F & G corridor,
    8) The names of the officers that were working at the front gate at approx. 1:00 A.M. on Sunday, April 12, 2015,
    9) The names of any and all officers that were involved in the use of force on April 11, 2015,
    10) A copy of the Unusual Incident Report created in connection to the incident of April 11, 2015,
    11) A copy of any and all injury reports created in connection to the incident(s), and
    12) A copy of any and all "To/From" memos created in connection to the incident(s).

51. On April 15, 2015, I submitted a Grievance (Log #79494-15), which was received by the Grievance Committee on April 29, 2015 but was not filed until May 6, 2015. This grievance addressed both of the incidents of assault by the defendants. (The first in the F & G corridor and the second when I returned from the outside hospital.)

8

52. On April 17, 2015, Defendant Eric Gutwein, a Commissioner's Hearing Officer at Green Haven Correctional Facility, commenced a Superintendent's Hearing. At that time, I entered a plea of "Absolutely not guilty" to the charges. I objected to the commencement of the hearing, as I had not heard back from my assistant. Despite my objections, the defendant Gutwein insisted that I enter a plea to the charges and identify any witnesses and documentary evidence that I wanted. The hearing was then adjourned until May 13, 2015.

53. During the period of the disciplinary hearing, I verbalized numerous requests, to the Special Housing Unit personnel, to be seen by medical. I, literally, could not walk because of the injury I received.

54. I was informed that if an inmate in the Special Housing Unit has any medical issues, they are required to inform Dr. Bentivegna, verbally, while he is on rounds. There are no 'written request' requirements for sick call requests in place. Dr. Bentivegna makes 'rounds' almost every weekday, at which time inmates are allowed to speak to him.

55. I verbally complained to Dr. Bentivegna numerous times about the injuries that I had sustained and the pain I was enduring because of those injuries.

56. On April 19, 2015, I filed a grievance about the lack of appropriate medical attention that I was experiencing. (Grievance #GH-79448-15). This grievance was filed April 21, 2015. As a result of the investigations concerning this grievance, it was discovered that Dr. Bentivegna had not recorded many of my complaints (i.e. my back injury, 'floaters' in both eyes, chronic headaches, sore ribs, thigh, and feet).

57. When I saw Dr. Bentivegna, I requested a C-scan because I was complaining about head injuries. I was experiencing pain and a lump on the back of my head. I was also experiencing 'floaters' (black spots that were floating in my field of vision) in both of my eyes.

58. On May 4, 2015, defendant R. Berstell approached my cell and requested that I sign the "Notice of Assistance – Assistant Form – Page 2." I told Mr. Berstell that he had not completed my requests and had not written down everything that I requested. Defendant Berstell stated that he had done all that he was going to do. I stated that I was refusing to sign the form as I was not satisfied with the assistance that he had provided.

59. On May 13, 2015, Defendant Gutwein reconvened the Superintendent's Hearing. The following witnesses were interviewed: Defendants Hennig and Sergeant Osborne (via speaker phone).

60. Defendant Hennig testified that he was assigned to escort inmates to medication and was present when I was brought in from the E & F yard. However, he did not identify who had escorted me in from the yard. He further testified that, despite being assigned to medication escort, he ordered me to submit to a pat frisk that he then conducted. He further testified that he had received a minor abrasion to his left eye and that photos were taken.

61. I rebutted this testimony by stating that I had been on "Loss of Recreation" status and that it was therefore impossible for me to have been in the yard. I stated that defendant Hennig had come to my cell and escorted me from E block to the F & G corridor. I further requested to be provided with the defendant Hennig's alleged post incident injury photos.

62. I objected to the pre-hearing assistant's denial of my requests. First, I had requested a copy of the log book of the F & G corridor to know who the officers were that were assigned to that area. My assistant refused to copy the log book and stated that he had been unable to read the entries. I renewed my for the log book entries to defendant Gutwein in order to identify who the other officers were that were working in the F & G corridor.

63. I also requested that Sergeant Carter, Nurse Genet, the State Police contact person, C.O. Ernst, C.O. Coops, C.O. Wazinski, and C.O. Dillon be called as witnesses. I also requested the investigator from the Inspector General's Office (now called 'Office of Special Investigations') that I had spoken to on March 24, 2015 to be a witness. Finally, I requested to know who the officers were that were working in the E & F yard on the date of the incident so that I could potentially call them to rebut the claim that I had been in the yard.

64. I further requested copies of my injury photos as well as any names and photos of officers that claimed injury. A copy of the video tape of the E & F yard, a copy of the "Go Around" list created by the block officer that records who requested recreation that day, and a copy of the Unusual Incident Report ('U.I.'). I also requested to see the alleged pills that were alleged to have been recovered at the incident. Finally, I requested that I be provided with a copy of the disposition of the Tier II hearing completed on March 24, 2015.

65. I also objected to the timeliness of the hearing and requested a copy of the extension.

66. Sergeant Osborne was interviewed by speaker phone. He testified that he had been called to the F & G corridor after I had been pulled in from the yard. He did not identify who had pulled me in from the yard. He denied telling C.O. Hennig to retrieve me from my cell to be seen by him. He also denied asking me any question concerning my conversation with the investigator from the I.G.'s office. He also denied seeing me escorted in from the E & F yard. He stated that he had not assaulted me, that C.O.'s Hennig and Ernst were the

only officers involved in the use of force on me, and that Sergeant Carter was a part of the response team but that he could not recall how many officers responded. He also stated that I was placed in restraints without the response team assisting.

67. Defendant Gutwein denied my questions regarding defendant Sergeant Osborne's past history of use of force incidents.

68. I requested that defendant Gutwein investigate my claims that I was not in the yard as alleged by the officers and that I was on 'Loss of Recreation' status.

69. Defendant Gutwein stated that he had placed the requested photos in the hearing packet and showed them to me. These photos consisted of the alleged pills that were recovered, my injury photos, and photos of C.O. Hennig, C.O. Ernst and Sergeant Osborne. However, I was not able to see the photos due to being behind plexiglass and not having my glasses. When I requested that he allow me to see them at a closer distance, defendant Gutwein refused to even acknowledge the request.

70. The hearing was adjourned again until June 16, 2015.

71. On May 24, 2015, I submitted a letter to the Ms. Stanaway, Inmate Grievance Program Supervisor concerning my desire to appeal Grievance # 79448-15 and Grievance # 79494-15 to the Superintendent due to inaction by the Inmate Grievance Committee.

72. On June 4, 2015, Superintendent Griffin denied Grievance #79494-15.

73. On June 8, 2015, I submitted a supplemental memo concerning Grievance #79494-15, wherein I stated the names of Officers Morell, Dillon and Freeman as being involved in assaulting me on April 11, 2015.

74. On June 12, 2015, Ms. Stanaway responded to my June 8, 2015 memo concerning Grievance #79494-15 by stating that the investigation was complete and that any further information should be attached to my appeal.

75. On June 12, 2015, I submitted an appeal of the denial of Grievance # 79494-15 to the Central Office Review Committee.

76. On June 16, 2015, Defendant Gutwein reconvened the Superintendent's Hearing. Also, the Commissioner's Hearing Officer Bersini was present, as an observer, during the hearing. The following witness was interviewed: Defendant Ernst.

77. Defendant Ernst testified that he had brought me in from the yard for allegedly acting suspicious. He stated that I was pat frisked and that two

11

alleged Neurotin pills were recovered. He stated that he called defendant Sergeant Osborne, the area supervisor. He stated that he was assigned to the E & F yard on the night of the alleged incident. He stated that he was the one who determined that I had been acting suspicious but could not recall in what way I had been acting suspicious. He also stated that he had injuries on both his left and right hand caused by me during the "struggle". Finally, he recalled the presence of C.O. Hennig and another unnamed officer (who was assigned to the F & G corridor).

78. On June 17, 2015, Defendant Gutwein reconvened the Superintendent's Hearing. Also, the Commissioner's Hearing Officer Bersini was present, as an observer, during the hearing. Defendant Gutwein provided me a redacted copy Directive 4004 entitled "Unusual Incident Report". I had never asked for the redacted copy of this directive. Rather, I had asked for a non-redacted copy of the Unusual Incident Report that was written in connection to this incident to ascertain if any officers had claimed any injuries (See paragraphs #50 & #64).

79. The hearing was adjourned for approximately 12 minutes for me to review Directive #4004.

80. When the hearing reconvened, I requested to know if the alleged Neurotin pills were properly tested and or identified. The hearing officer stated that it was not his duty to ascertain if the drugs were properly tested or identified.

81. I also objected to the Unusual Incident Report which was written in connection to the incident as not being in compliance with the D.O.C.C.S. Directive 4004.

82. I also objected, again, to the photos that were placed in the record as I was unable to see them due to my glasses be thrown away by defendant Hennig. I further requested permission to be able to see them at the hearing up close and was denied without any reason being given.

83. Defendant Gutwein then asked me to reiterate all of my desired witnesses, including those that I had already requested and that he had not called. I had attempted to remember all of them but I requested the following witnesses:

    1) Nurse S. Ganet,
    2) Sergeant Carter,
    3) C.O. Schelder,
    4) C.O. Freeman,
    5) C.O. Morell,
    6) C.O. Coops,
    7) C.O. Wazinski,
    8) C.O. Dillon,
    9) The investigator from the I.G.'s office,

      10) The State Police contact person, and
      11) And any witnesses named previously during the hearing.

84. Defendant Gutwein then asked me to reiterate all of my desired evidence to be submitted, including those that I had already requested and that he had not been submitted. I had attempted to remember all of them but I requested the following evidence to be submitted or obtained:

    1) the videotapes of the yard,
    2) the disposition of the Tier II hearing completed on March 24, 2015,
    3) the 'Go Around' list, and
    4) anything previously requested and not produced or submitted.

85. The hearing was adjourned again until June 18, 2015.

86. On June 18, 2015, Defendant Gutwein reconvened the Superintendent's Hearing. Also, the Commissioner's Hearing Officer Bersini was present, as an observer, during the hearing. Defendant Gutwein state on the record his reasons for denial of the video and for a number of requested witnesses.

87. The following were denied for the following reasons on a written Form 2176:

| **Requested** | **Reason Given** | **My Objection to Reason** |
| --- | --- | --- |
| 1) The video | No video of the incident | Videos requested were not of the incident but of the yard and housing/corridors and videos were timely requested of pre-hearing assistant and hearing officer |
| 2) 'Go Around List' | Unavailable | Hearing took over 2 months to complete. The list was timely requested by me from both the pre-hearing assistant and the hearing officer. It was not preserved through intent to hinder my defense |
| 3) Sergeant Osborne | Testified by speaker | None |

88. On June 18, 2015, the Superintendent's Hearing was concluded and the Hearing Officer found me guilty of violating Rules 114.11 'Violent Conduct', 100.11 'Assault on Staff', 113.14 'Unauthorized Medication', 114.10 'Smuggling', 107.10 'Interference with Employee', and 106.10 'Refusing a Direct Order' and imposed the following sanctions:

270 days Special Housing Unit confinement
270 days Loss of Package, Commissary, and Phone Privileges
A Month Loss of Recommended Good Time
and Confiscate (Medication)

89. At the conclusion of the hearing, defendant Gutwein provided the plaintiff with additional written Form 2176 "Witness Interview Notice" forms stating the reasons for the exclusion of the following witnesses from the hearing. However, he did not state on the record the reasons for their denial or give me an opportunity to object.

1) Nurse Genet
2) C.O. Suedeker
3) C.O. Dillon
4) C.O. Rosinsky
5) C.O. Coons
6) C.O. Freeman
7) C.O. Morel
8) Sergeant Carter
9) Investigator of the Office of Special Investigations
10) State Police Contact

90. On June 23, 2015, I wrote to F. Bernstein, MD - Facility Health Service Director to complain that I was not receiving adequate medical attention

91. On June 29, 2015, I filed a timely appeal challenging the Superintendent's Hearing.

92. On July 3, 2015, I mailed a Notice of Intention to File a Claim to the New York State Attorney General's Office via Certified Return Receipt Requested. The Notice of the claim is specified in the following text:

"This Claim is for assault and for negligence by the State of New York for failure to provide reasonable and adequate medical care on 4/11/15 (Date of incident) and thereafter.[and for] the assault by staff. (sic) (bracketed text not in original)  And for failure to properly asses (sic) injuries as to cause claimant prolong serious injuries. (sic)"

93. On July 8, 2015, I wrote to Ms. Stanaway, Inmate Grievance Program Supervisor, concerning my desire to appeal Grievances #79494-15, 79448-15, and 79510-15. The ground upon which I wanted to appeal was due to inaction by the Superintendent in responding to my appeals of the above grievances.

94. On July 9, 2015, Ms. Stanaway responded to my July 8th letter by informing me that Grievance #79494-15 had been sent to CORC (Central Office Review

Committee) on July 3, 2015. She further stated that Grievance # 79448-15 was awaiting the Superintendent's Decision. She did not state the status of Grievance # 79510-15.

95. On July 9, 2015, Superintendent Griffin affirmed Grievance #79448-15. I subsequently appealed to the Central Office Review Committee.

96. On July 15, 2015, the Inmate Grievance Program received my Grievance #80174-15, which I submitted regarding my request to receive appropriate medical treatment. This was filed July 16, 2015.

97. On August 17, 2015, the Inmate Grievance Resolution Committee voted to grant my Grievance #80174-15.

98. On August 20, 2015, D. Venettozzi, Director, Special Housing / Inmate Disciplinary Program issued a Review of Superintendent's Hearing affirming the Superintendent's Hearing completed on June 18, 2015.

99. On September 1, 2015, the Central Office Review Committee received my appeal of Grievance #79448-15.

100.    On September 15, 2015, I submitted a letter of reconsideration to D. Venettozzi seeking a reconsideration of his August 20, 2015 decision affirming the Superintendent's Hearing completed on June 18, 2015.

101.    On September 30, 2015, the Central Office Review Committee "unanimously accepted in part" by upholding the determination rendered by the Superintendent of Grievances #79448-15 and #79510-15.

102.    On October 6, 2015, Superintendent Griffin affirmed Grievance #80174-15.

103.    On November 3, 2015, D. Venetozzi wrote to me regarding my letter of reconsideration and stated that he felt that there were no grounds to grant any relief to me regarding the Superintendent's Hearing completed on June 18, 2015.

104.    On November 4, 2015, the Central Office Review Committee upheld the Superintendent's determination of Grievance #79494-15.

105.    In 2015, I filed a petition pursuant to Article 78 of the New York State Civil Practice Law and Rules (hereinafter 'Article 78'). This petition was filed in Albany County Court. (Matter of Anderson (00-a-0502) v. Venetozzi [Albany County Index No.: 5172-15])

106.    The Article 78 petition was transferred to the Appellate Division, Third Department, as it raised an issue of insufficient evidence, pursuant to CPLR §7804(g).

107.    I was released from the Special Housing Unit after serving the entire penalty imposed by the hearing officer.

108.    On March 1, 2016, the Central Office Review Committee received my appeal of Grievance #80174-15.

109.    On March 23, 2016, the Central Office Review Committee 'Unanimously Accepted in Part' the determination of the Superintendent on Grievance #80174-15.

110.    On August 10, 2016, A. Rodriguez, Acting Director, Special Housing / Inmate Disciplinary Program issued a Review of Superintendent's Hearing. This review states:

> "On behalf of the Commissioner, please be advised that your Superintendent's Hearing of June 18, 2015, has been Administratively Reversed on August 10, 2016."

111.    On August 16, 2016, the Attorney General's Office filed a letter to the Clerk of the Court of the Appellate Division, Third Department requesting that the case be dismissed as moot due to the Administrative Reversal (Matter of Anderson (00-a-0502) v. Venetozzi [Appellate Division Docket No.: 522845]).

112.    On December 8, 2016, the New York State Appellate Division, Third Department dismissed the Article 78 proceeding as being moot. (Anderson v. Venettozzi 2016 WL 7129445.)

# CAUSE OF ACTION

## First cause of action: Cruel and Unusual Punishment

113.    The first cause of action lies in the violation of my Eighth Amendment right to be free from cruel and unusual punishment. The infliction of cruel and unusual punishment, in this regard, consists in the defendant's willful and premeditated assault and battery upon me. The assault and battery consisted of punches, kicks, baton strikes, elbow and knee strikes, and the infliction of pain by violently twisting my handcuffs.

114.   Upon information and belief, I aver that there was no cause for these officers to assault me. This was a willful and premeditated action to punish me for speaking to an investigator of the Inspector General's Office. The New York State Department of Corrections and Community Supervision's policy directly prohibits the use of unlawful assault and battery upon inmates by their staff. All assaultive action by the D.O.C.C.S. staff was perpetuated without reason and in the presence of, or by active participation by, or by the tacit non-involvement by, Correctional Officers and Sergeants.

## Second cause of action: Denial of Medical Treatment/Wanton Infliction of Unnecessary Pain

115.   The second cause of action lies in the defendant's deliberate indifference to my serious medical issues and needs (and thereby causing an unnecessary infliction of pain and suffering) which deprived me of my rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

116.   Upon information and belief, I aver that there was no cause for the medical staff to ignore my valid requests for appropriate medical treatment. This was a willful and premeditated action to cause me excessive and unwarranted pain and suffering for speaking to an investigator of the Inspector General's Office. I believe that the actions of the medical staff were also motivated by the fear of themselves being subject to retaliation by the defendant Correction Officers and Sergeants.

## Third cause of action: Denial of Free Speech

117.   The third cause of action lies in the violation of my First Amendment right to seek redress from grievances against state employees and the right to free exercise of speech.

118.   Upon information and belief, Sergeant Osborne, C.O. Hennig and C.O. Ernst planned and executed an assault upon me in retaliation for my speaking to the investigator from the Inspector General's Office. The intent of this assault was to foster fear within me and to prevent me from seeking redress of grievances against the abuses committed by the staff of Green Haven Correctional Facility. As a result of this assault, I am extremely afraid of all staff and I experience intense bouts of stress and insomnia. I want to seek treatment but I am afraid that it would require discussing the assault and I am afraid that I will be assaulted again.

### Fourth cause of action: Denial of Due Process

119.    The fourth cause of action lies in the violation of my rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution before being deprived of liberty and/or being subjected to corporal punishment.

120.    Upon information and belief, I aver that there was no cause for the issuance of the false misbehavior report, the finding of guilt at the Superintendent's Hearing, or the imposition of the penalty by the defendant Hearing Officer. This was a willful and premeditated action to cause me excessive and unwarranted loss of liberty, privileges, and atypical and significant amount of pain and suffering caused thereby, for speaking to an investigator of the Inspector General's Office. The defendants denied me any opportunity to prepare a defense by denying relevant documentary evidence and witnesses by the pre-hearing assistant and the hearing officer.

# EXHAUSTION OF ADMINISTRATIVE REMEDIES

## *Inmate Grievance Procedure*

121.    On April 15, 2015, I submitted a Grievance (Log #79494-15), which was received by the Grievance Committee on April 29, 2015 but was not filed until May 6, 2015.

122.    On April 19, 2015, I filed a grievance about the lack of appropriate medical attention that I was experiencing. (Grievance #GH-79448-15). This grievance was filed April 21, 2015. As a result of the investigations concerning this grievance, it was discovered that Dr. Bentivegna had not recorded many of my complaints (i.e. my back injury, 'floaters' in both eyes, chronic headaches, sore ribs, thigh, and feet).

123.    On May 24, 2015, I submitted a letter to the Ms. Stanaway, Inmate Grievance Program Supervisor concerning my desire to appeal Grievance # 79448-15 and Grievance # 79494-15 to the Superintendent due to inaction by the Inmate Grievance Committee.

124.    On June 4, 2015, Superintendent Griffin denied Grievance #79494-15.

125.    On June 8, 2015, I submitted a supplemental memo concerning Grievance #79494-15, wherein I stated the names of Officers Morell, Dillon and Freeman as being involved in assaulting me on April 11, 2015.

126.    On June 12, 2015, Ms. Stanaway responded to my June 8, 2015 memo concerning Grievance #79494-15 by stating that the investigation was complete and that any further information should be attached to my appeal.

127.    On June 12, 2015, I submitted an appeal of the denial of Grievance # 79494-15 to the Central Office Review Committee.

128.    On June 23, 2015, I wrote to F. Bernstein, MD - Facility Health Service Director to complain that I was not receiving adequate medical attention.

129.    On July 8, 2015, I wrote to Ms. Stanaway, Inmate Grievance Program Supervisor, concerning my desire to appeal Grievances #79494-15, 79448-15, and 79510-15. The ground upon which I wanted to appeal was due to inaction by the Superintendent in responding to my appeals of the above grievances.

130.    On July 9, 2015, Ms. Stanaway responded to my July 8th letter by informing me that Grievance #79494-15 had been sent to CORC (Central Office Review Committee) on July 3, 2015. She further stated that Grievance # 79448-15 was awaiting the Superintendent's Decision. She did not state the status of Grievance # 79510-15.

131.    On July 9, 2015, Superintendent Griffin affirmed Grievance #79448-15. I subsequently appealed to the Central Office Review Committee.

132.    On July 15, 2015, the Inmate Grievance Program received my Grievance #80174-15, which I submitted regarding my request to receive appropriate medical treatment. This was filed July 16, 2015.

133.    On August 17, 2015, the Inmate Grievance Resolution Committee voted to grant my Grievance #80174-15.

134.    On September 1, 2015, the Central Office Review Committee received my appeal of Grievance #79448-15.

135.    On September 30, 2015, the Central Office Review Committee "unanimously accepted in part" by upholding the determination rendered by the Superintendent of Grievances #79448-15 and #79510-15.

136.    On October 6, 2015, Superintendent Griffin affirmed Grievance #80174-15.

137.    On November 4, 2015, the Central Office Review Committee upheld the Superintendent's determination of Grievance #79494-15.

*Inmate Disciplinary Appeal*

138.    On June 29, 2015, I filed a disciplinary appeal challenging the disciplinary hearing conducted by Defendant Eric Gutwein

139.    On August 20, 2015, D. Venettozzi, Director, Special Housing / Inmate Disciplinary Program issued a Review of Superintendent's Hearing affirming the Superintendent's Hearing completed on June 18, 2015.

140.    On September 15, 2015, I submitted a letter of reconsideration to D. Venettozzi seeking a reconsideration of his August 20, 2015 decision affirming the Superintendent's Hearing completed on June 18, 2015.

141.    On November 3, 2015, D. Venetozzi wrote to me regarding my letter of reconsideration and stated that he felt that there were no grounds to grant any relief to me regarding the Superintendent's Hearing completed on June 18, 2015.

142.    On August 10, 2016, A. Rodriguez, Acting Director, Special Housing / Inmate Disciplinary Program issued a Review of Superintendent's Hearing. This review states:

> "On behalf of the Commissioner, please be advised that your Superintendent's Hearing of June 18, 2015, has been Administratively Reversed on August 10, 2016."

## PLAINTIFF SEEKS A TRIAL BY JURY ON ALL ISSUES.

# <u>RELIEF SOUGHT</u>

WHEREFORE, Jerome Anderson prays for judgment in his favor against each defendant as follows:

143.    INJUNCTIVE ORDER: Plaintiff seeks an order that permanently removes each defendant found liable from their employment or, in the alternative, enjoins them from having any contact with inmates.

144.    DECLARATORY JUDGMENT: Plaintiff seeks that this court pronounces the constitutional nature of each violation that the defendants are found liable for violating.

145.    COMPENSATORY JUDGMENT: Plaintiff seeks compensatory judgment in the amount of $2,000,000.00 (Two Million Dollars) for both the physical injury sustained and the amount of time spent in the Special Housing Unit.

146.    PUNITIVE DAMAGES: Plaintiff seeks that this court orders the defendants to pay $5,000,000.00 (Five Million Dollars).

147.    COSTS AND FEES: Plaintiff request that this court order the defendants to pay the costs and fees incurred by the plaintiff in the litigation of this action.

148.    The plaintiff seeks any further relief deemed just and equitable by this court.

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to those matters alleged upon information and belief, and, as to those, I believe them to be true. Pursuant to 28 U.S.C. § 1746, I declare and verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: _June 26_, 2017

Jerome Anderson 00A0502
    (Plaintiff – Pro Se)
Auburn Correctional FACility
PO. BOX 618.
AuBurn, N.Y. 13024

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

June 26, 2017
Dated

Plaintiff's Signature

Jerome
First Name

Middle Initial

Anderson
Last Name

AuBurn Correctional Facilty  P.O. Box 618
Prison Address

AuBurn
County, City

N. Y
State

13024
Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: June 26, 2017

Page 6

To: Clerk of the Court
From: Jerome Anderson (00A0502)
RE: Amended Complaint (Anderson v. Osborne, 17-CV.00539 (VB))
Date: June 25, 2017


Dear Clerk,
Please find enclosed, three Copies of an amended Complaint.
Notice that said Complaint is an exact replica of the original Complaint. The only changes are the names of two Jane and two John Doe's. As instructed by the Court, I was to include the names of all Jane and John Doe's in an amended Complaint.
Notice, I wasn't able to type in the names of the Jane / John Doe's as it is hard enough getting to the law library, let along finding help to have typing done. This is my first time litigating (pro se) I ask the Court to accept amended Complaint as is, and if for some reason the Court inist allowed to accept, Complaint as is, I ask the Court to inform me of what I did wrong, or what I didn't do, according to the Court rules, as opposed to dismissing Complaint.
Thank you,
Sincerely
Jerome Anderson
Jerome Anderson
Pro-se

RECEIVED
SDNY DOCKET URM.
2017 JUL -5  AM 10:30

Jerome Anderson 00A0502
Auburn Corr. Fac.
135 State Street
Auburn N.Y. 13021-1800

T-S

RECEIVED
SDNY DOCKET UNIT

2017 JUL -6 AM

USMP3
SDNY

Clerk of The Court

United States District Court Pro Se
Southern District of New York unit
The Daniel Patric Moynihan United State Courthouse
500 Pearl Street
New York N.Y. 10007





AUBURN CORRECTIONAL FACILITY



U.S. POSTAGE
ZIP 13021
02 1W
0001387039