United States District Court
Southern District of New York
----------------------------------------------------------X
Jerome Anderson,

        Plaintiff.,

vs.                                               17 Civ. 539 (VB)

Sgt. Robert Osborne, CO Matthew Ernst,
CO James Hennig, CO Robert Snedeker,

        Defendants.
----------------------------------------------------------X

**Plaintiff's Memorandum of Law in Opposition
to Defendants' Motion for Judgment as a Matter
of Law and, in the alternative, a New Trial**

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277

Michael Diederich

Diederich Law Office
361 Route 210
Stony Point, New York 10980
(845) 942-0795

Counsel for Plaintiff

**Table of Contents**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2. The events of April 11, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        a. Defendants version of events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        b. Plaintiff's version of events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    3. Plaintiff is charged with contraband possession . . . . . . . . . . . . . . . . . . . . . . . . . 4

    4. Plaintiff's physical injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    5. Plaintiff's emotional injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    6. The verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Point I

Defendants are not entitled to judgment as a matter of law because the jury
was free to credit Plaintiff's version of events and find that he was subjected
to excessive force . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B. The jury was able to find that Defendants subjected Plaintiff to
       excessive force, and that Defendants caused his physical
       injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C. The jury was able to find that Plaintiff suffered mental anguish . . . . . . . . . . . . . . 13

    D. The jury was able to find that Defendants Hedecker subjected
       Plaintiff to excessive force by twisting and tightening the
       handcuffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Point II

Defendants are not entitled to a new trial because the verdict is not a miscarriage
of justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A. Defendants bear a heavy burden in obtaining a new trial  . . . . . . . . . . . . . . . . . . . . . . . 15

    B. As the jury credited Plaintiff's account, the verdict should stand . . . . . . . . . . . . . . . 16

    C. Counsel's trial tactics and summation do not entitle Defendants
      to a new trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      1. Plaintiff's rebuttal testimony does not warrant a new trial. . . . . . . . . . . . . . . . . . . 20

      2. Plaintiff's counsel did nothing else to warrant a new trial . . . . . . . . . . . . . . . . . . . 22

Point III

The jury properly awarded Plaintiff $75,000 in damages for pain and suffering . . . . . . . . . . . . 24

    A. Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    B. The damages award does not shock the conscience. . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Point IV

The punitive damages do not shock the conscience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    A. The jury was able to find that Defendants' actions warranted punitive
      damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    B. The punitive damages awards are not excessive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      1. The conduct was reprehensible. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      2. The ratio between compensatory and punitive damages is not
        excessive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## Table of Authorities

*Advance Pharm., Inc. v. United States*,
    391 F.3d 377 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Alla v. Verkay*,
    979 F. Supp. 2d 349 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Bove v. New York City*,
    No. 98 CIV. 8800 (HB), 1999 WL 595620 (S.D.N.Y. Aug. 6, 1999) . . . . . . . . . . . 12, 13

*BMW of N. America v. Gore*,
    517 U.S. 559 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 30

*Cabral v. City of New York*,
    12 Civ. 4659 (LGS), 2018 WL 4750675 (S.D.N.Y. Aug. 11, 2015) . . . . . . . . . . . . . . . 28

*Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*,
    955 F. Supp. 2d 118 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cross v. N.Y.C. Transit Auth.*,
    417 F.3d 241 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dancy v. McGinley*,
    843 F.3d 93 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 26

*Davis v. Klein*,
    No. 11-CV-4868 ENV, 2013 WL 5780475 (E.D.N.Y. Oct. 25, 2013). . . . . . . . . . . . . . 13

*Dennison Mfg. Co. v. Ben Clements & Sons, Inc.*,
    467 F. Supp. 391 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*DiSorbo v. Hoy*,
    343 F.3d 172 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 29

*F.D.I.C. v. Suna Assocs., Inc.*,
    80 F.3d 681 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Greenway v. Buffalo Hilton Hotel*,
    143 F.3d 47 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hayes v. New York City Police Dept.*,
    212 Fed. Appx. 60 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hightower v. Nassau Cty. Sheriff's Dept.*,
  325 F. Supp. 2d 199 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hudson v. McMillian*,
  503 U.S. 1 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Jackson v. Tellado*,
  No. 11-CV-3028 (PKC), 2018 WL 4043150 (E.D.N.Y. Aug. 24, 2018) . . . . 26, 27, 29, 30

*Lewis v. City of Albany Police Dep't*,
  547 F. Supp. 2d 191 (N.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 30

*Jennings v. Yurkiw*,
  No. 14-CV-6377 (SMG), 2018 WL 5630454 (E.D.N.Y. Oct. 31, 2018) . . . . . . . 13, 28, 29

*Mallis v. Bankers Tr. Co.*,
  717 F.2d 683 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Manley v. Ambase Corp.*,
  337 F.3d 237 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Marcoux v. Farm Serv. & Supplies, Inc.*,
  290 F. Supp. 2d 457 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mathie v. Fries*,
  121 F.3d 808 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Matusick v. Erie Cty. Water Auth.*,
  739 F.3d 51 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maxwell v. City of New York*,
  380 F.3d 106 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Mendoza v. City of Rome*,
  872 F. Supp. 1110 (N.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Metromedia Co. v. Fugazy*,
  983 F.2d 350 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morales v. City of New York*,
  No. 99 Civ. 10004 (DLC), 2001 WL 8594 (S.D.N.Y. Jan. 2, 2001) . . . . . . . . . . . . . . . . 26

iv

*Murray v. Williams,*
    No. 05-CV-9438 (NRB), 2007 WL 430419 (S.D.N.Y. Feb. 7, 2007) . . . . . . . . . . . . . . . 26

*Nelson v. Cty. of Suffolk,*
    No. 12-CV-5678 (DRH) (AKT), 2019 WL 3976526 (E.D.N.Y. Aug. 22, 2019). . . . . . . 28

*Pappas v. Middle Earth Condo. Ass'n,*
    963 F.2d 534 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Parker v. Bulik,*
    No. 11-CV-5412 (ADS) (SIL), 2017 WL 3396440 (E.D.N.Y. Aug. 5, 2017) . . . . . . . . . 20

*Patrolmen's Benevolent Ass'n. v. of City of New York,*
    310 F.3d 43 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Payne v. Jones,*
    711 F.3d 85 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

*Raedle v. Credit Agricole Indosuez,*
    670 F.3d 411 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Ricciuti v. New York City Tran. Auth.,*
    70 F. Supp. 2d 300 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Robison v. Via,*
    821 F.2d 913 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scala v. Moore McCormack Lines,*
    985 F.2d 680 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Tatum v. Jackson,*
    668 F. Supp. 2d 584 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Tolbert v. Queens Coll.,*
    242 F.3d 58 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Agrawal,*
    726 F.3d 235 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Barrow*,
   400 F.3d 109 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Vasbinder v. Scott*,
   976 F.2d 118 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Vasquez v. New York City Dep't of Educ.*,
   No. 11-CV-3674 (AJN), 2015 WL 3619432 (S.D.N.Y. June 10, 2015) . . . . . . . . . . 15, 16

*Walsh v. New York City Hous. Auth.*,
   828 F.3d 70 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wat Bey v. City of New York*,
   No. 01 CIV. 09406 (AJN), 2013 WL 12082743 (S.D.N.Y. Sept. 4, 2013) . . . . . . . . . . . 16

*Zhiwen Chen v. Cty. of Suffolk*,
   927 F. Supp. 2d 58 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Preliminary Statement

This Court instructed the jury that the fact that a witness may be a correction officer or an inmate should have no bearing on credibility. (Tr. 707). The jury took that instruction to heart. While Plaintiff is an inmate who previously escaped from jail, the jury credited his account and determined that he was subjected to excessive force and suffered physical and emotional injuries.

Defendants claim that Plaintiff suffered *de minimis* injuries and that he cannot overcome their testimony that (1) he was out of place when they found him outside his cell and (2) he struck the officers following a pat-frisk that revealed contraband pills. But the jury found instead that Defendants escorted Plaintiff from his cell and brought him into a location that was not under video surveillance, and assaulted him without provocation after he declined to discuss what he had told an OSI investigator. That assault was sufficiently wanton that the jury awarded punitive damages.

Defendants also seek to overturn the verdict and, in the alternative, obtain a new trial on the basis of factual arguments that the jury was entitled to reject. Defendants also seek new trial in claiming that Plaintiff's trial counsel unduly prejudiced the jury with inappropriate trial tactics and summation. In addition, Defendants claim the jury awarded Plaintiff too much money. However, Defendants failed to object to counsel's summation, which constituted fair comment on the evidence. Viewing the evidence most favorably to Plaintiff, the damages do not shock the conscience, and punitive damages were in order.

## Statement of Facts

### 1. Introduction.

Plaintiff Jerome Anderson is incarcerated at Green Haven Correctional Facility, serving a 37-year sentence. (Tr. 318, 332 [Exh. 3 to Bergstein Aff.]). On April 11, 2015, Plaintiff was 52

years old. (Exhibit D to Collins Decl. [Pl. Trial Exh. 26, ECF 148-4, at 3]). That day, Plaintiff was prohibited from outside recreation time or contact with general population. (Tr. 201, 334-35).

### 2. The events of April 11, 2015.

### a. Defendants' version of events.

Defendants testified that Plaintiff was acting suspiciously in the recreation yard (the "E & F Yard") that day (Tr. 144-45, 159, 261, 458-59; Exhibit H to Collins Decl. [Pl. Exh. 10]), at which time Defendant James Hennig pat-frisked Plaintiff and discovered two Neurontin pills in Plaintiff's front pocket (Tr. 145, 261, 458-59), prompting a call to Defendant Sgt. Robert Osborne. Defendants maintained that, upon Sgt. Osborne's intervention, Plaintiff punched him in the face (Tr. 464-65), resulting in a scuffle in which the officers brought Plaintiff to the floor and handcuffed him. (Tr. 262, 273-76, 283, 286-87, 290, 292-93, 295, 465-66, 485-86). Defendants denied assaulting Plaintiff. (Tr. 150, 279-280, 490, 533-34).

### b. Plaintiff's version of events.

Plaintiff provided an entirely different account. Two weeks prior to this incident, Plaintiff was interviewed by an investigator from the Office of Special Investigations (OSI) about sexual harassment. (Tr. 333, 414). Other officers were present when Plaintiff was questioned. (Tr. 333).

On April 11, 2015, Plaintiff was not in the recreation yard, as he was not permitted to be there. (Tr. 348-49, 400, 410 ["there's no way I could've been to the yard at Green Haven . . . without an officer letting me out"]). Instead, Plaintiff was on a "loss of recreation," as he was "not allowed to go outside under no circumstances with regular population." (Tr. 334-35). Plaintiff was never charged with being out of place on April 11, 2015. (Tr. 416). That evening, Defendant James Hennig approached Plaintiff in his cell and said that Sgt. Osborne wanted to

speak with him. (Tr. 335). Although this defendant denied doing so (Tr. 153-54), Hennig next escorted Plaintiff to the F & G Corridor, where Sgt. Osborne was waiting. (Tr. 335). Defendant Matthew Ernst testified that he escorted Plaintiff to the F & G Corridor, at a location that was not under video surveillance. (Tr. 159). Sgt. Osborne wanted to know what Plaintiff told OSI during the investigation. (Tr. 333, 335). Plaintiff said he did not want to discuss the matter. (Tr. 335).

Sgt. Osborne next told Plaintiff to put his hands to the wall. (Tr. 335). Although Plaintiff complied with that directive (Tr. 335-36), Sgt. Osborne "punched [Plaintiff] in my face." (Tr. 336). Hennig and Ernst next "got me off the wall, then they proceeded to beat me and push me, you know, beat me on the floor, kick me, stomp me, push my face to the floor." (Tr. 336). Other officers joined in the beating. (*Id.*) While Defendants claimed that Plaintiff was belligerent and had assaulted Sgt. Osborne and officers Hennig and Ernst during this confrontation (Tr. 146-47, 150, 154, 204-211, 215-16, 262, 273-74; Exhibits H, J and L to Collins Decl. [Pl. Trial Exhs. 3, 10, 22]; Exhibit 1 to Bergstein Aff. [Pl. Trial Exh. 5]), Plaintiff denied those allegations and testified that he assaulted no one that day. (Tr. 349). He further testified that he had not been charged with assaulting staff in the 10 years preceding the April 11, 2015 incident. (Tr. 374; Exhibit 2 to Bergstein Aff. [Pl. Trial Exh. 28-a]). Including the incident on April 11, 2015, Plaintiff has never been found guilty of assaulting any correction officer. (Tr. 412-13).

Sgt. Osborne's report on the confrontation states that, before Plaintiff was admitted to SHU, "medical staff evaluated Inmate finding redness to his right small toes, two superficial markings on both wrists, two superficial scrapes to right shoulder and swelling to right thigh." (Tr. 229; Exh. J to Collins Decl. [Pl. Trial Exh. 3]). The infirmary called an ambulance to transport Plaintiff to Putnam Hospital. (Tr. 341-42). Plaintiff spent several hours at Putnam Hospital, where he was diagnosed and treated. (Exhibit D to Collins Decl. [Pl. Trial Exh. 26]).

### 3. Plaintiff is charged with contraband possession.

Following Plaintiff's return to the prison from Putnam Hospital, he was served with disciplinary charges alleging that he was carrying two Neurontin pills on the evening of April 11, 2015. (Tr. 348, 365). Although Defendants produced photographs purportedly depicting the pills they found on him (Tr. 460; Exh. I to Collins Decl. [Def. Trial. Exh. L]), Plaintiff testified that these charges were "totally false" and that he "never heard anything about pills until I left the infirmary and went back to my cell and received a disciplinary." (Tr. 348). Plaintiff affirmatively denied that he was carrying any pills that day. (Tr. 348, 398). Plaintiff further testified that he had not made any medication runs on April 11, 2015, and that he was not on medication at that time. (Tr. 610). For that reason, Plaintiff was not able to visit the infirmary on his own that day. (*Id*.) In addition, Plaintiff testified, on that date, correction personnel on E Block knew his whereabouts at all times. (Tr. 611). He denied sneaking into a "yard run" on the evening of April 11, 2015 from E Block to E & F yard, insisting it was not possible in a maximum security facility for him to sneak a medication run for purposes of obtaining pills (Tr. 611-12), and that "[i]t's impossible to escape from inside a cell to outside." (Tr. 612-13). A search of Plaintiff's cell that day turned up no drugs. (Tr. 200).

### 4. Plaintiff's physical injuries.

After Plaintiff was escorted to SHU, Dr. Robert Bentivegna examined him. (Tr. 556). The doctor agreed that Plaintiff suffered "much more than mere bumps and bruises in connection with the incident of April 11, 2015." (Tr. 579). He noted that Plaintiff had redness on his right four small toes, red superficial markings to his wrists (front and back), a superficial scrape to his right rear shoulder, and swelling on his right thigh "with noticeable swelling." (Tr. 556; Exh. F to Collins Decl. [Def. Trial Exh. C-1] ECF 148-6, at 2). The doctor further noted that Plaintiff was

4

ambulating with a limp and his "right outer portion of hand and neck hurting and headache." (Tr. 556-57; Exh. F to Collins Decl., ECF 148-6, at 2). Plaintiff was sent to Putnam Hospital to further evaluate his injuries, particularly to his thigh. (Tr. 557-58, 561-62; Exh. F to Collins Decl., ECF 148-6, at 2). Dr. Bentivegna agreed that, since muscle swelling takes time to materialize, considerable swelling in the thigh only five minutes after the incident "would suggest a fairly forceful blunt trauma." (Tr. 569).

That night, Plaintiff was admitted to Putnam Hospital, which documented Plaintiff's injuries from the assault. (Exh. D to Collins Decl. [Pl. Trial Exh. 26], ECF 148-4). Plaintiff presented with "complaints of right lower extremity pain after an altercation with a corrections officer earlier this evening. Patient states he was brought to the ground by the officer and alleged choked and stepped on. On arrival, patient also complains of bilateral wrist pain, neck pain, and right foot pain." *Id*. at ECF 148-4, at 14.

Plaintiff was diagnosed with pain and swelling in his leg, neck pain, "pain in limb" and pain and swelling in his wrist. *Id*. at ECF 148-4, at 7. The medical records also note that Plaintiff suffered contusions of the hip and thigh. *Id*. at ECF 148-4, at 6, 18. Plaintiff described the "acute" pain in his upper leg, neck, and wrist on a scale of 9/10. *Id*. at ECF 148-4, at 9. Elsewhere in the medical records, Plaintiff's pain in his upper leg, neck, and wrist was 8/10 and 9/10 at different times that evening. *Id*. at ECF 148-4, at 13. His "generalized" pain was 9/10. (*Id*.) The records also stated that Plaintiff had "tenderness at the right proximal thigh." *Id*. at ECF 148-4, at 16. Plaintiff was prescribed 60 mg of Ketorolac for pain relief in his lower extremity. *Id*. at ECF 148-4, at 19. While Plaintiff told Putnam Hospital staff that he took "solid blows" to the head, hospital staff did not examine those injuries. (Tr. 345).

After Plaintiff was released from Putnam Hospital, he returned to the Green Haven infirmary. (Tr. 562). The medical record for April 12, 2015 states that Plaintiff had a contusion in his right thigh. (Tr. 570-71; Exh. F. to Collins Decl. [Def. Trial Exh. C-1], ECF 148-6, at 2). On April 14, 2015, Plaintiff complained about pain in his left elbow and right knee, his left rib, and a headache. (Tr. 562-63, 574; Exh. F. to Collins Decl., ECF 148-6, at 3). In Dr. Bentivegna's judgment, Plaintiff "had some post-traumatic signs of -- that he had been involved in a trauma but that he was medically stable." (Tr. 566). The doctor further agreed that, if Plaintiff suffered "blunt force trauma to the head, followed by immediate complaint of a headache, that would be one indicia of a possible concussion." (Tr. 577 [answering, "I suppose so, but it's a pretty common complaint in that circumstance"]). While Dr. Bentivegna did not observe an increase in intracranial pressure (Exhibit F to Collins Decl. [Def. Trial Exh. C-1], at ECF 148-6, at 3), he testified that such an increase was only a "possibility" if someone is beaten on the head (Tr. 584), and that he did not closely examine Plaintiff's head. (Tr. 588). The records further noted that Plaintiff had posttraumatic sequelae," which means "the patient was obviously involved in . . . a trauma," though he was "medically stable." (Tr. 577; Exh. F. to Collins Decl. [Def. Trial Exh. C-1], ECF 148-6, at 3). Plaintiff also complained about pain in his left rear ribs. (Tr. 577; Exh. F. to Collins Decl., at ECF 148-6, at 3).

As a result of the beating, Plaintiff could not walk for one to two weeks and needed to use a crutch, had headaches, and "was sore all over." (Tr. 367). He also testified that the medical records (Exh. C to Collins Decl. [Pl. Trial Exh. 2-A]) did not properly document all of his physical injuries. (Tr. 369, 396 [referring to both Green Haven and Putnam Hospital]).

**5. Plaintiff's emotional injuries.**

Following the beating, Plaintiff experienced a few violent, unusual dreams and "was kind of afraid of being in that particular facility for a while. . . . I didn't sleep well until after I left that particular facility, because a lot of the officers w[ere] still coming to the SHU area" directing sarcastic comments toward him. (Tr. 367-68).

**6. The verdict.**

The jury determined that Defendants Osborne, Ernst, Hennig, and Snedeker subjected Plaintiff to excessive force in the F & G Corridor. (Tr. 770-71). The jury awarded Plaintiff $75,000 in compensatory damages (Tr. 772) and punitive damages as follows: (1) $275,000 against Osborne; (2) $125,000 against Ernst; (3) $125,000 against Hennig; and (4) $50,000 against Snedeker. (Tr. 773).

**ARGUMENT**

**POINT I**

**DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF
LAW BECAUSE THE JURY WAS FREE TO CREDIT PLAINTIFF'S VERSION OF
EVENTS AND FIND THAT HE WAS SUBJECTED TO EXCESSIVE FORCE**

**A. Standard of review.**

In summation, counsel for Defendants told the jury that Plaintiff "would have you believe that Sergeant Osborne, Officer Hennig, Officer Ernst, and Officer Snedeker beat him, brutally, for five minutes in the F and G corridor." (Tr. 653). After noting that "Defendants dispute Mr. Anderson's stories," counsel stated, "So, now it's up to you, ladies and gentlemen, to decide what really happened here. . . . And you must weigh the credibility of the witnesses who have testified. It is your job to determine what actually happened that day." (Tr. 654). That directive tracks the legal standard guiding Defendants' motion for judgment as a matter of law.

7

This Court must deny a Rule 50 motion "unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Matusick v. Erie Cty. Water Auth.*, 739 F.3d 51, 72 (2d Cir. 2014).  The trial court must "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001).

The movant's burden "*is particularly heavy* after the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) (emphasis supplied). A movant can only meet this burden when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded persons could not arrive at a verdict against it." *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004).

### B. The jury was able to find that Defendants subjected Plaintiff to excessive force, and that Defendants caused his physical injuries.

"The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "[A] claim of excessive force may be established even if the victim does not suffer 'serious,' or 'significant' injury, provided that the amount of force used is more than '*de minimis,*' or involves force that is 'repugnant to the conscience of mankind.'" *United States v. Walsh*, 194 F.3d 37, 47–48 (2d Cir. 1999). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

8

decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. In *Hudson*, the Court stated:

> [T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."

*Id.* at 7.

Importantly, "the Second Circuit has permitted excessive force claims to stand where the only injury alleged was scrapes or bruises. In other words, and contrary to [any] suggestion that permanent or severe injury is necessary, the law of this circuit 'does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury.'" *Zhiwen Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 67 (E.D.N.Y. 2013); *see also Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987) (holding that "the plaintiff's claims that she was pushed against the inside of her car door, 'yanked' out of her car by the police officer, and thrown up against the fender of her car were sufficient to survive summary judgment," and that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe"); *Maxwell v. City of New York,* 380 F.3d 106, 109-110 (2d Cir. 2004) (where the plaintiff alleged the police banged her head while she was being put into a police car, the district court improperly held that a head scrape cannot support an excessive force claim); *Hayes v. New York City Police Dept.,* 212 Fed. Appx. 60, 62 (2d Cir. 2007) ("we have permitted

claims to survive summary judgment where the only injury alleged is bruising"); *Murray v. Williams,* No. 05–CV–9438 (NRB), 2007 WL 430419, at *7 (S.D.N.Y. Feb. 7, 2007) (declining to find the force was *de minimis* where plaintiff alleged a laceration to his lower lip, a bloody nose, pain and suffering, and mental anguish).

   As an initial matter, contrary to Defendants' position (Def. Br. at 9-10), Plaintiff did not suffer minor scrapes or bruises or *de minimis* injuries. Since Defendants did not assert this argument in their Rule 50(a) motion at trial (Tr. 439-447), this argument is waived, and they must satisfy the "manifest injustice" test to prevail on this motion. *Lore v. City of Syracuse*, 670 F.3d 127, 152-53 (2d Cir. 2012). Green Haven medical staff found that Plaintiff had significant swelling on his right thigh ("suggest[ing] a fairly forceful blunt trauma"), bruising on both wrists and on his toes, scrapes to his shoulder, he was ambulating with a limp, and he complained of a headache, pain in his elbow, right knee, and left rib. (Tr. 556-57, 562-63, 569-571, 574; Exh. F and J to Collins Decl.). Plaintiff's injuries warranted a transfer to Putnam Hospital, where he complained of significant physical pain to his upper leg, neck, wrist as well as "generalized" pain requiring pain medication. (Exh. D to Collins Decl., at ECF 148-4, at 6-7, 9, 13, 16, 18-19). Dr. Bentivegna testified that Plaintiff suffered a trauma. (Tr. 577; Exh. F to Collins Decl., ECF 148-6, at 3). To the extent Plaintiff's medical records do not reflect all of his injuries, he testified (and the jury was entitled to find) that the hospital did not document or examine all of his injuries. (Tr. 345, 369, 396). The verdict is not a manifest injustice..

   Defendants seek JMOL because Plaintiff "did not testify where on his body he was allegedly beaten, kicked or stomped on." (Def. Br. at 7). Defendants also argue that Plaintiff did not specifically identify which officer injured his thigh "or when this event occurred." (*Id.*) As Defendants did not raise these arguments under their Rule 50(a) motion (the purpose of which is

to allow the plaintiff an opportunity to cure any defects in proof, *Lore*, 670 F.3d at 153), they are waived. In any event, based on Plaintiff's testimony and the medical records, the jury was free to infer that Defendants struck him on the portions of his body that were injured and bruised, including his thigh. As Defendants note, elsewhere in Plaintiff's testimony, he did specify where the officer had struck portions of his body. (*Id*.) The jury was also free to credit Plaintiff's testimony that Sgt. Osborne punched him in the face, and that Hennig and Ernst beat him on the floor, kicked him, stomped him and pushed his face to the floor. (Tr. 336). As Defendants did not introduce medical records demonstrating that Plaintiff had any of these ailments prior to the beating, the jury was able to find that Defendants caused these injuries, which are consistent with the assault to which Plaintiff testified. Defendants did not object to the verdict form (Tr. 648-49) or the jury charge which did not ask the jury to identify how each officer injured Plaintiff. (Tr. 632, 713-15). By jointly tackling and beating Plaintiff, Defendants cannot argue that the victim was unclear exactly which defendant kicked, struck, beat, or restrained him.

While they did not raise this argument on their Rule 50(a) motion at trial, Defendants also claim they did not cause Plaintiff's wrist injuries because other officers, Warren Freeman and Jose Morel, escorted him to SHU. (Def. Br. at 7-8). But Plaintiff did not attribute those injuries solely to Freeman and Morel. Plaintiff testified that these two officers escorted Plaintiff to SHU "after I was handcuffed." (Tr. 336). While Plaintiff testified that Freeman and Morel tightened the handcuffs during the escort (Tr. 337), that does not conclusively establish that Defendants did not cause his wrist injuries as well in applying the handcuffs. (Tr. 275-76). As Defendants testified that Plaintiff struggled as they tried to apply the restraints, (*id*.), the jury may find they exaggerated the extent of Plaintiff's resistance as a means to justify the bruising caused by their overly aggressive handcuffing. Relatedly, while Defendants claim the medical records do not

support Plaintiff's testimony that they dislocated his arms while applying the handcuffs (Def. Br. at 8), the jury may find that, while his arms were not dislocated, Defendants caused him significant pain while applying the restraints behind his back that it felt like they had pulled his arms "out of socket." (Tr. 337).

Defendants next argue that Plaintiff did not establish that he suffered any head injury or bruising on his back. (Def. Br. at 8). This argument is also waived, Defendants must show a manifest injustice. They cannot. In claiming that Plaintiff had to introduce medical evidence to corroborate his injuries, Defendants cite non-binding authority for the proposition that the jury must reject the plaintiff's account of his injuries where "undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries attributed to an alleged use of force." (*Id.*) Our research turns up no Second Circuit rulings that apply that legal standard, which contradicts settled authority that "the law of this circuit 'does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury,'" *Zhiwen Chen*, 927 F. Supp. 2d at 67, and that even minor scrapes and bruises may support such a claim. *Maxwell*, 380 F.3d at 109-110. But even if this Court adopts the test proposed by Defendants, the medical records demonstrate that Plaintiff endured physical injuries, and the jury was free to reject portions of Plaintiff's claims in that respect, *i.e.*, that the officers had dislocated his arms. As demonstrated above, the medical records document *inter alia* bruising on Plaintiff's thigh, as well as scrapes and bruises. Even Dr. Bentivegna conceded that Plaintiff had a limp and "evidenced much more than mere bumps and bruises in connection with the incident of April 11, 2015." (Tr. 556-57, 579). Cases that grant judgment as a matter of law in excessive force claims typically lack of any medical records to substantiate the plaintiff's allegations. *See e.g. Bove v. New York City*, No. 98

12

CIV. 8800 (HB), 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999); *Davis v. Klein*, No. 11-CV-4868 (ENV), 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013).

In the context of post-trial motions, Defendants' "undisputed medical records" rule is more flexible, as demonstrated by the analysis in *Jennings v. Yurkiw*, No. 14-CV-6377 (SMG), 2018 WL 5630454 (E.D.N.Y. Oct. 31, 2018), where the Court distinguished the line of cases relied upon by Defendants case as arising in the summary judgment context (*id.* at *6 n.3), noting further that "Defendants' primary argument in this case is that the medical records undercut Plaintiff's account of the *degree of force used.*" *Id.* at *6 (emphasis in original). While the medical professionals in *Jennings* testified that the plaintiff did not suffer certain bone fractures or contusions or lacerations, "[t]here was, however, some medical testimony describing additional injuries. Medical records shown to Dr. Matari reflected that Plaintiff had swelling on the left side of his head. Other records presented at trial reflected injuries to Plaintiff's neck and scalp." (*Id.*) This analysis undermines Defendants' argument that the jury was required to accept their position. (Def. Br. at 9). Even if the jury did not accept all of Plaintiff's factual claims, it was not compelled to find that Defendants subjected Plaintiff to no excessive force at all.

**C. The jury was able to find that Plaintiff suffered mental anguish.**

In police misconduct cases, "[t]he plaintiff is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury to health. Since the injury is in large part a mental one, the plaintiff is entitled to damages for mental suffering, humiliation, and the like." *Dancy v. McGinley*, 843 F.3d 93, 114 (2d Cir. 2016). Moreover, a plaintiff's subjective testimony of emotional injury may be substantiated by "the objective circumstances of the violation itself." *Patrolmen's Benevolent Assn. v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002); *see also DiSorbo v. Hoy*, 343 F.3d 172, 184 (2d Cir. 2003)

("it would have been quite reasonable for the jury to find resulting psychological injuries" where the plaintiff was beaten "by a law enforcement officer who was substantially larger and stronger than she" while "she was handcuffed and defenseless").

As Defendants did not argue in their Rule 50(a) motion that Plaintiff suffered no mental anguish (Tr. 439-447), they cannot show the pain and suffering finding was a manifest injustice. The Plaintiff testified that Defendant officers assaulted him without provocation because he did not discuss the OSI investigation with Sgt. Osborne. The fears of any inmate were realized in this case: that a prisoner who is serving a long sentence and remains at the mercy of correction officers might be assaulted for no good reason. As the circumstances of the excessive force violation corroborate Plaintiff's testimony that he experienced emotional distress and did not sleep well, Defendants are not entitled to judgment as a matter of law on his damages claim.

### D. The jury was able to find that Defendant Snedeker subjected Plaintiff to excessive force.

Plaintiff testified that "other officers came and joined the beating." (Tr. 336). As this Court noted in denying Snedeker's Rule 50(a) motion, since Snedeker admitted he was in the F & G Corridor at around the same time, he is not entitled to JMOL, as the jury may find that Snedeker was among the officers who assaulted Plaintiff. (Tr. 616-18). As this Court further noted, the jury may find that Snedeker conspired with the other Defendants to cover up the beating. (Tr. 617-18).

The jury was also able to hold Snedeker for the excessive handcuffing. While Snedeker testified that he showed up right after the confrontation ended (Tr. 533-34; *see also* Exh. B to Collins Decl. [Pl. Trial Exh. 15]), he also stated that he escorted Plaintiff to SHU. (Tr. 166). During the escort, Plaintiff was in handcuffs. (Tr. 336). While Plaintiff did not identify Snedeker as among the escorting officers (*id.*), the jury was able to credit Snedeker's testimony about his

14

role in the escort. Nothing prevents the jury from partially crediting a defendant's testimony and discrediting the rest. Since (1) Plaintiff testified that the officers twisted and tightened the handcuffs during the escort (Tr. 337), and (2) the jury was able to find that Snedeker helped to escort Plaintiff to SHU, it could also find that Snedeker injured Plaintiff's wrists.

## POINT II

### DEFENDANTS ARE NOT ENTITLED TO A NEW TRIAL BECAUSE THERE WAS NO MISCARRIAGE OF JUSTICE

#### A. Defendants bear a heavy burden in obtaining a new trial.

Under Rule 59, movants bear a heavy burden in upsetting a verdict that draws largely from the credibility assessments that the jury alone is responsible for resolving. While the district court "is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner . . . [F]or a district court to order a new trial under Rule 59(a), it must conclude that 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice,' *i.e.*, it must view the jury's verdict as 'against the weight of the evidence.'" *Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003). Moreover, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992); *see also Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) ("trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury'"); *Vasquez v. New York City Dep't of Educ.*, No. 11-CV-3674 (AJN), 2015 WL 3619432, at *12 (S.D.N.Y. June 10, 2015) ("A trial judge should be least inclined to disturb a jury's verdict, based entirely or primarily upon witness

15

credibility, where the conflicting accounts of the witnesses are equally plausible (or implausible), and there is no independent evidence in the trial record clearly demonstrating that, if a miscarriage of justice is to be avoided, one party's witnesses should not be believed") (quoting *Ricciuti v. New York City Tran. Auth.*, 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999). In *Raedle*, after reviewing the cases in this area, the Court stated, where "a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." 670 F.3d at 418-19.

Finally, "a trial judge's disagreement with the jury's verdict is not sufficient reason to grant a new trial." *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 691 (2d Cir. 1983); *see also Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *15 (S.D.N.Y. Sept. 4, 2013) ("Ultimately, [the Court] must deny a motion for a new trial as long as a reasonable jury could have reached the verdict under review — even if [it] might have reached a different conclusion had [it] acted as the finder of fact at trial").

### B. As the jury credited Plaintiff's account, the verdict should stand.

Despite the settled prohibition against second-guessing the jury's credibility assessments on a Rule 59 new trial motion, Defendants want this Court to do precisely that. Their memorandum of law attacks Plaintiff's "fantastic and vague account" which required the jury to "believe Plaintiff's incredible suggestion" that dozens of individuals partook in a conspiracy against him. (Def. Br. at 11). They add that Plaintiff's testimony of the beating in the F & G Corridor "defies belief." (*Id.*) In fact, the parties offered entirely different accounts of how Plaintiff found himself in the F & G Corridor: Defendants claim that Plaintiff sneaked out for a medication run and somehow obtained contraband-pills, while Plaintiff testified that he was

escorted from his cell into the F & G Corridor so that Sgt. Osborne could speak to him about an OSI investigation. Since no documentary or video evidence establishes how Plaintiff initially encountered Defendants in the F & G Corridor, the jury was free to credit Plaintiff's testimony in finding that Hennig escorted Plaintiff from his cell to the site of the confrontation. Similarly, no non-testimonial evidence (video or otherwise) demonstrates whether Plaintiff attacked Sgt. Osborne, or whether Defendants assaulted him without provocation. The only evidence was testimonial, which means the jury credited Plaintiff's account. This motion is no place to challenge that credibility assessment; the time and place for that was trial and summation. Defendants gave it their best shot, and the jury -- as evidenced by the notes it handed up during deliberations and its surgical verdict in which it rejected Plaintiff's case against other Defendants -- decided this case in good faith. The fact that Plaintiff is incarcerated, had prior prison escapes, and (according to Defendants) "has the knowledge and skills necessary to sneak into areas where he is not permitted while incarcerated in a correctional facility" (Def. Br. at 12, 14) has no bearing on this motion. All of that was relevant to credibility, not whether Defendants attacked Plaintiff without provocation. For these reasons alone, Defendants are not entitled to a new trial.

Apart from the jury's prerogative to credit Plaintiff's account, other evidence corroborates his testimony. Contrary to Defendants' position, the jury did not have to find that anyone falsified the medical records in order to find that Plaintiff was assaulted. (Def. Br. at 13). The medical evidence shows that Plaintiff suffered injuries, scrapes, and bruises on April 11, 2015 and, as demonstrated in Point I (B), in order to prevail at trial, Plaintiff did not have to show the medical records depict severe injuries.

In addition, Defendants put on no witnesses to dispute Plaintiff's testimony that he spoke with an OSI investigator several weeks before the events giving rise to this lawsuit. While

Defendants emphasized at trial that Plaintiff was unable to identify who the investigator was, it would have been easy to prove that no such investigation had taken place at that time. Yet, it was Plaintiff's conversation with OSI that provided the motive for Sgt. Osborne and the other Defendants to assault Plaintiff as a potential snitch against correction officers.

While the parties offered conflicting testimony as to whether Plaintiff was allowed to be in the E & F Yard despite his recreation restrictions, no conclusive proof, such as written prison policies, resolved that evidentiary conflict, and no documentary evidence establishes that Plaintiff was there on his own volition and not in his cell. Defendants' argument that Plaintiff "admitted" that the jail should have records showing that Hennig escorted him into the E & F Corridor (Def. Br. at 13) does not hold water. Plaintiff actually testified that "one would think" such records would exist, but that "I don't know OC's routine." (Tr. 611). Defendants' reliance on *Dennison Mfg. v. Ben Clements & Sons*, 467 F. Supp. 391, 422 (S.D.N.Y. 1979), for the proposition that uncorroborated testimony of a self-interested witness "weakens credibility" is misplaced. *Dennison* did not overturn a jury verdict but was a bench-trial business dispute with significant documentary evidence undermining the witness's testimony. Most party testimony is "self serving." Courts cannot outright disregard "self-serving" testimony in credibility disputes. *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 80 (2d Cir. 2016).

Relatedly, Plaintiff was never disciplined for his allegedly unauthorized sojourn into the E & F Yard. This lack of discipline suggests that Defendants could not prove that Plaintiff had committed the violation. And, while Hennig swore out an assault charge against Plaintiff, he was never prosecuted for such a crime, permitting the inference that such a prosecution would fail as unmeritorious. A search of Plaintiff's cell later that evening turned up no pills, permitting the inference that Plaintiff was not carrying them in the first instance.

18

Defendants' documentary evidence further highlights inconsistencies that the jury was able to consider in resolving the credibility disputes. Hennig's written account (Exh. 1 to Bergstein Aff. [Pl. Trial Exh. 5]) omits how exactly he initially came upon Plaintiff that evening, and other than stating that he was "performing my duties as a Correction Officer," it says nothing about Ernst asking him to assist in pat-frisking Plaintiff over his allegedly suspicious behavior in the E & F Yard. Ernst's statement (Exh. H to Collins Decl. [Pl. Trial Exh. 10]) does not explain why, if Ernst saw Plaintiff acting suspiciously, he asked Hennig to conduct the pat frisk rather than perform it himself. And, while Defendants insist that Plaintiff was carrying unauthorized pills, the jury was able to question why the pills were photographed 1.5 hours after the officers initially saw the nurse for their injuries, with the nurse identifying the pills for Defendants. (Tr. 208; Exh. I to Collins Decl. [Def. Trial Exh. L]). While Defendants argue that the pill photographs prove they found them on Plaintiff (Def. Br. at 12), the jury was able to find that Defendants had access to the non-narcotic pills (Tr. 579) on their own. The jury was also able to find that Defendants did not identify the pills right away because there were none at the time of the assault; they arrived at the contraband story to cover-up their assault on Plaintiff.

Finally, while Defendants argue that Osborne and Hennig's reports document bruising and swelling "where they testified Plaintiff punched them" (Def. Br. at 14), the jury was able to find that the reports did not describe injuries consistent with their claim that Plaintiff was "violent and aggressive" (Exh. J to Collins Decl. [Pl. Trial Exh. 3]), and Defendants did not introduce the photographs that were taken of the staff injuries that Sgt. Osborne referenced in his write-up. (*Id*.) The jury could also find that other factors caused their bruising, such as that the officers suffered these injuries while assaulting Plaintiff, who testified that they "got me off the wall" and "beat me on the floor," at which time "other officers came and joined the beating." (Tr.

19

336). This suggests a fracas where Defendants may have suffered "friendly fire" or accidently banged into each other or the bench in the hallway while they attacked Plaintiff.

### C. Counsel's trial tactics and summation do not entitle Defendants to a new trial.

"[T]he bounds of counsel's advocacy are circumscribed by considerations of the prejudice it might engender. . . . Obviously not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial. Some misconduct is *de minimis* in the context of the entire trial, and some is promptly dealt with by the trial court's rulings and curative instructions. Yet, when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 539-540 (2d Cir. 1992).

"[I]n evaluating a motion for a new trial based on counsel's alleged misconduct, the court 'must consider such a claim in the context of the trial as a whole, examining, among other things, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments.' 'The relevant inquiry . . . is whether there is a 'reasonable probability' that the jury's verdict was influenced by the improper conduct of counsel.'" *Parker v. Bulik*, No. 11-CV-5412 (ADS), 2017 WL 3396440, at *21 (E.D.N.Y. Aug. 5, 2017).

### 1. Plaintiff's rebuttal testimony does not warrant a new trial.

Defendants seek a new trial because this Court allowed Plaintiff to testify on rebuttal that he could not have entered the recreation yard on his own. Defendants argue that this unfairly prejudiced them because (1) it gave Plaintiff another bite at the apple in testifying again that he could not have snuck out of his cell; and (2) Defendants were unable to recall their facility policy

expert "to rebut Plaintiff's new contention" that he was not on a medication run. (Def. Br. at 16-18). This does not entitle Defendants to a new trial.

"[R]ebuttal is necessarily a flexible concept and [ ] trial judges are uniquely situated to assess the impact certain evidence or arguments have made on a jury." *United States v. Barrow*, 400 F.3d 109, 120 (2d Cir. 2005). "A district court has wide discretion in determining whether to permit evidence on rebuttal." *F.D.I.C. v. Suna Assocs., Inc.*, 80 F.3d 681, 687-88 (2d Cir. 1996).

After Defendants rested, Plaintiff's counsel requested rebuttal. This Court allowed Plaintiff to testify that he could not have taken a medication run on April 11, 2015 because he was no longer taking medication and thus could not have gone to the infirmary. Plaintiff also testified on rebuttal that staff had documented "such issuance of drugs" in the past. (Tr. 610-11). Defendants claim this testimony was improper because, contrary to Plaintiff's counsel's representations at trial that this rebuttal covered a newly-developed defense, their Rule 26 disclosures had already stated that facility expert Thomas Melville would testify that logbooks reflect that Plaintiff could have entered E & F Yard via the evening medication run or by joining E-Block's evening recreation run. (Def. Mem. at 16-17) (citing Exh. M to Collins Decl., at 6).

Defendants are not entitled to a new trial on this issue, and Plaintiff's counsel did not engage in "egregious" misconduct. (Def. Br. at 17). Defendants concede that the rebuttal testimony was similar to Plaintiff's testimony on his case-in-chief, that "he did not go on a medication run on the day of the incident, and that if he had, there should be medical documentation to corroborate it." (Def. Br. at 17) (citing Tr. 399-400, 416). At worst, the rebuttal was duplicative and thus harmless, and this Court properly exercised its broad discretion in allowing it. During colloquy on the rebuttal testimony, Defendants' counsel did not remind the Court that Plaintiff had already testified to this. Nor did Defendants' counsel point to the Rule 26

disclosures, or even advise the Court that Melville was unavailable to respond to Plaintiff's rebuttal. (Tr. 605-09). Second, while Defendants asserted in the Rule 26 disclosures that Melville would testify that the logbooks reflect that Plaintiff could have entered the E & F Yard through the medication and recreation runs, while they knew in advance that the parties would dispute whether Plaintiff entered the E & F Yard on his own, Defendants introduced no such evidence, even though they walked Melville through other logbook evidence on related issues. (Tr. 510-17). It was for the jury to resolve how Plaintiff reached the E & F Yard that night. Defendants' argument that Plaintiff's rebuttal testimony made the difference at trial (Def. Br. at 17) is speculative and minimizes the jury's ability to fairly weigh the evidence and deliberate fairly.

### 2. Plaintiff's counsel did nothing else to warrant a new trial.

Defendants claim that Plaintiff's counsel (1) improperly emphasized that Plaintiff was not criminally prosecuted for the April 11, 2015 incident; (2) mischaracterized the evidence in stating Plaintiff was never charged for being out of place; (3) sought to introduce inadmissible evidence; (4) improperly commented on Plaintiff's testimony that the F & G Corridor incident lasted five minutes; and (5) "blatantly expressed his own personal opinions about Plaintiff" to elicit sympathy. (Def. Br. at 18-20). None of these arguments warrant a new trial.

All the issues above except for (3) relate to counsel's summation. "'[A]rguing to a jury, counsel must properly have some latitude, so long as prejudice does not appear.' For this reason, '[n]ot every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted.'" *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 155 (E.D.N.Y. 2013). On a new trial motion, the court "should consider counsel's summation in its entirety 'within the context of the court's rulings on

objections, the jury [charge], and any corrective measures applied by the trial court.' The relevant inquiry in assessing undue prejudice is whether there is a 'reasonable probability' that the jury's verdict was influenced by the improper conduct of counsel." *Id.* at 156.

Defendants did not contemporaneously object to Mr. Diederich's summation. (Tr. 683, 685-92, 699-700). That constitutes waiver unless the "unpreserved 'error [is] so serious and flagrant that it goes to the very integrity of the trial.'" *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998). Yet, as this Court held in denying Defendants' belated request to strike portions of the summation, counsel's comments were neither "unreasonable [n]or excessive." (Tr. 704-05, 731-33).

The jury was able to find that Plaintiff was not prosecuted because there was insufficient evidence to proceed against him. As for counsel's argument in summation that Plaintiff was not disciplined for being out of place because he was never in the yard on his own volition, while Defendants claim they had no knowledge that Plaintiff was out of place (Def. Br. at 18), that argument supports Plaintiff's position that he was never in the recreation yard. The jury could find that no charges means no violation. As for Mr. Diederich's comment in summation about the complexity of memory (*id.* at 19), counsel is permitted to ask the jury to consider their common knowledge and experience in determining witness credibility. *Compare Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 468 (S.D.N.Y. 2003) (denying motion for new trial where "the personal belief statement by plaintiff's attorney in the present case tended to support obvious inferences from the evidence such as that plaintiff would suffer chronic pain from her injuries and that she would be unable to perform the duties of a general staff nurse"). The same holds true for Mr. Diederich's comments eliciting sympathy for his client (Def. Br. at 19-20), which is the obligation of any trial counsel. If these comments were so "egregious" as to

23

unduly influence the jury (*id*. at 21), Defendants' counsel should have objected. They did not. This Court instructed the jury that "[a]rguments by attorneys are not evidence" and that "[w]hat they have said to you in their opening statements and their summations is intended to help you understand the evidence to reach your verdict." (Tr. 718-19). As we presume that jurors follow the trial court's instructions, *United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013), nothing said in summation could have improperly influenced the jury.

Finally, Defendants seek a new trial because Mr. Diederich tried to introduce inadmissible evidence. (Def. Br. at 18-19). But this Court sustained Defendants' objections (or Mr. Diederich withdrew the question) before the jury heard any prejudicial or improper evidence. (Tr. 133, 366, 434-37, 578-79). It is not uncommon for trial counsel to offer evidence that the trial court deems inadmissible. There is no reason to believe this prejudiced Defendants. For confirmation of this, consider the verdict for pain and suffering and the partial liability verdicts. While the jury found in Plaintiff's favor in his claims against Sgt. Osborne and Officers Ernst, Hennig, and Snedeker, it rejected his other claims against different defendants arising from events that also took place that evening. As demonstrated by the notes it handed up during deliberations and the modest damages award for pain and suffering, this was a thoughtful jury.

**POINT III**

**THE JURY PROPERLY AWARDED PLAINTIFF $75,000**
**IN DAMAGES FOR PAIN AND SUFFERING**

**A. Standard of review.**

"The 'calculation of damages is the province of the jury,' and 'we will not vacate or reduce a jury award merely because we would have granted a lesser amount of damages.' . . . [J]uries have wide latitude in setting compensation for damages," and judicial review "is

24

'narrow,' considering only 'whether the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014).

In making this determination, "courts have reviewed awards in other cases involving similar injuries, bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Scala v. Moore McCormack*, 985 F.2d 680, 684 (2d Cir. 1993). "When considering whether the award falls with a reasonable range, however, the Court does not balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater." *Tatum v. Jackson,* 668 F. Supp. 2d 584, 602 (S.D.N.Y. 2009). Where "the argument for remittitur is that the award is 'intrinsically excessive,' but the excess is 'not attributable to a discern[i]ble error,' the Court may 'reduce the award only to the maximum amount that would be upheld as not excessive.'" (*Id.*)

### B. The damages award does not shock the conscience.

The gravamen of Defendants' argument is that Plaintiff did not prove that he suffered any damages. (Def. Br. at 23). But, as demonstrated in Point I (B), that is simply not the case. Plaintiff may not have suffered egregious, life-changing injuries, but the record demonstrates that he suffered compensable injuries, both physical and emotional.

Plaintiff suffered significant swelling on his right thigh, bruising on both wrists and on his toes, scrapes to his shoulder, a headache, and pain to his elbow, right knee and left rib. Medical records show that Plaintiff complained of significant physical pain to these parts of his body, warranting pain medication. Also taking into account Plaintiff's emotional distress at being suddenly attacked by correction officers, the $75,000 jury award for pain and suffering does not shock the conscience and is comparable to other awards in excessive force cases where the plaintiff suffers significant and not "garden-variety" pain, adjusting those amounts for inflation, a

method approved in *Jackson v. Tellado*, No. 11-CV-3028 (PKC), 2018 WL 4043150, at \*4 n.4 (E.D.N.Y. Aug. 24, 2018). *Compare Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 206–10 (N.D.N.Y. 2008) ($65,000 damages award [$79,657.33 in 2020 dollars] did not shock the conscience where the plaintiff experienced contusions, swelling, and headaches due to an officer standing on his head and grinding his face into the pavement); *Hightower v. Nassau Cty. Sheriff's Dept.*, 325 F. Supp. 2d 199, 207–09 (E.D.N.Y. 2004) (reducing $150,000 award to $65,000 [$90,788.71] where two altercations with guards left pretrial detainee with bruises and contusions, a swollen upper lip, and pain in the lumbar spine, without rendering permanent damage); *Morales v. City of New York*, No. 99 Civ. 10004 (DLC), 2001 WL 8594, at \*7, 10 (S.D.N.Y. Jan. 2, 2001) (reducing jury award of $2.75 million to $50,000 [$73,865.79] for "deep bruises" and months of counseling where the officer held plaintiff tightly by the upper arms and forced her into a police car). These cases were cited approvingly in *Dancy v. McGinley*, 843 F.3d at 114. *See also Mendoza v. City of Rome*, 872 F. Supp. 1110, 1126 (N.D.N.Y. 1994) (remitting $200,000 jury award to $62,500 [$110,583.96] where the plaintiff suffered bruises and swelling of his knee, bruises to his forehead, headaches, and numbness to his wrists and hands, along with shame, humiliation, and embarrassment).

## POINT IV

### THE PUNITIVE DAMAGES DO NOT SHOCK THE CONSCIENCE

**A. The jury was able to find that Defendants' actions warranted punitive damages.**

"Punitive damages are available in a section 1983 case 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997). They are meant "to punish what has occurred and to deter its repetition." *Vasbinder v.*

*Scott*, 976 F.2d 118, 121 (2d Cir. 1992). Since Defendants did not raise this argument in their Rule 50(a) motion (Tr. 439-447) and they did not object to the punitive damages charge (Tr. 616-651), they must satisfy the manifest injustice standard. They cannot do so.

"Numerous cases from this Circuit have determined that punitive damages awards are appropriate for excessive force claims." *Jackson*, 2018 WL 4043150, at *9. While Defendants argue that the jury could not have found an improper motive (Def. Br. at 24-25), viewing the record in the light most favorable to Plaintiff, the jury found that Defendants punched, stomped, and otherwise subjected Plaintiff to excessive force without provocation. The jury was also able to find that Defendants lied about the circumstances in which Plaintiff found himself in the F & G Corridor, and that the beating took place in retaliation for Plaintiff's refusal to answer Sgt. Osborne's questions about Plaintiff's interview with an OSI investigator, ultimately landing Plaintiff in SHU for 300 days. Crediting Plaintiff's account, the jury was able to find that Plaintiff did nothing wrong that evening, and he did not precipitate the confrontation with a punch to Sgt. Osborne. Particularly since Plaintiff was in Defendants' custody, the assault was malicious, and at a minimum, demonstrated reckless indifference to his federal rights. *Lewis*, 547 F. Supp. 2d at 209 ("it is particularly important to further the goal of deterring defendants . . . from participating in violations of constitutional rights given their positions of public trust").

Defendants incorrectly claim that Plaintiff's attorney "conceded" that Hennig and Ernst merely acted in Sgt. Osborne's defense and could not be assessed punitive damages. (Def. Br. at 24). Counsel conceded nothing. He gave the jury different angles on the facts, including (1) all Defendants were present for purposes of intimidating Plaintiff when Sgt. Osborne punched him, triggering a melee (Tr. 682:18-21); and (2) even if Hennig and Ernst receive the "benefit of the doubt" and they did not see Sgt. Osborne attack Plaintiff, they got Plaintiff on the floor (where

he was defenseless) and gratuitously beat him. (Tr. 684:10-685:4). This is malicious under either scenario. But regardless of the alternatives offered in summation, the jury was able to find that all Defendants acted maliciously in assaulting Plaintiff.

**B. The punitive damages awards are not excessive.**

No clear, objective standard governs the award of punitive damages. *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). Federal courts consider whether "the jury's award is 'so high as to shock the judicial conscience and constitute a denial of justice.'" *Id.* at 96.

"In fulfilling their obligation to ensure that punitive damages award are 'fair, reasonable, predictable, and proportionate,' courts are to use the following guideposts set by the Supreme Court: '(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question.'" *Nelson v. Cty. of Suffolk*, No. 12-CV-5678 (DRH) (AKT), 2019 WL 3976526, at *13 (E.D.N.Y. Aug. 22, 2019) (citing *Payne*, 711 F.3d at 101, and *BMW of N. America v. Gore*, 517 U.S. 559 (1996)).

**1. The conduct was reprehensible.**

"The degree of reprehensibility is '[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *Jennings*, 2018 WL 5630454, at *16 (quoting *Gore*, 517 U.S. at 575). "Conduct marked by violence is more reprehensible than conduct that does not involve violence." *Cabral v. City of New York*, 12 Civ. 4659 (LGS), 2018 WL 4750675, at *7 (S.D.N.Y. Aug. 11, 2015) (citing *Gore*, 517 U.S. at 575). The same holds true for deceit. (*Id.*) As Plaintiff has argued throughout this brief, the jury was able to find the assault was unprovoked and in retaliation for Plaintiff's refusal to answer Sgt. Osborne's improper questions

about the OSI investigation after Sgt. Osborne ordered Hennig to remove Plaintiff from his cell. Nor did Plaintiff suffer *de minimis* physical injuries.

This case represents abuse of authority, abuse, deceit and malice sufficient to warrant punitive damages. *See DiSorbo*, 343 F.3d at 188 ("Police brutality cannot be tolerated in our society, and punitive damages awards serve a critical role in deterring such misconduct"); *Jackson*, 2018 WL 4043150, at *9 (noting the "violent and malicious assault" was "wholly improper behavior for law enforcement officers"). This case is comparable to *Jennings*, where the district court affirmed liability on punitive damages where the police assault was unprovoked, "all Defendants then engaged in administering further strikes to an already subdued arrestee," and "Defendants engaged in this behavior while exercising their responsibilities and pursuant to their authority as public servants and law enforcement officers." *Jennings*, 2018 WL 5630454, at *16. Since "[t]he evidence supporting the first two factors, even without the third, is sufficient to establish a high degree of reprehensibility," *Alla v. Verkay*, 979 F. Supp. 2d 349, 374 (E.D.N.Y. 2013), to recover punitive damages, Plaintiff is not required to prove that Defendants had previously engaged in violent conduct.

**2. The ratio between compensatory and punitive damages is not excessive.**

Nor is the ratio of punitive damages to compensatory damages excessive. "[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula." *Gore*, 517 U.S. at 582. In *Payne*, the Second Circuit noted that the Court in *Gore* "repeatedly stressed the impossibility of making any bright-line test, as the propriety of the ratio can vary enormously with the particular facts of the case," 711 F.3d at 102 (citing 517 U.S. at 582-83), and that "[i]t is difficult or impossible to make useful generalizations." (*Id.*) By itself, the ratio does not determine whether the punitive damages are excessive; the court must consider

29

the context of case. *See Payne*, 711 F.3d at 103 (noting that, in certain instances, a 10-to-1 ratio might be permissible). Relatedly, "[w]hen the compensable injury was small but the reprehensibility of the defendant's conduct was great, the ratio of a reasonable punitive award to the small compensatory award will necessarily be very high." *Id*. at 102.

In *Gore*, the Court noted that it had approved a 10:1 ratio in a prior case. 517 U.S. at 581. In this case, the ratio between $575,000 in punitive damages and $75,000 in compensatory damages is 7.67:1. In context, this ratio is not too high. The jury knew what it was doing, assigning different awards based on the defendant's misconduct, allocating the highest amount for Sgt. Osborne, who set Plaintiff up for the assault and punched him in the face, and the lowest amount for Snedeker, who injured Plaintiff through the too-tight handcuffs. As these were law enforcement officers, the jury properly considered their lawless behavior in a location without video surveillance. While the jury did not award Plaintiff a six-figure compensatory award, it recognized that Defendants' behavior was outrageous, awarding punitive damages accordingly.

Finally, the punitive damages are not excessive in comparison to other cases. The awards in this case range from $50,000 to $275,000. These numbers fall within the range of other police brutality cases. *See Jackson*, 2018 WL 2018 WL 4043150, at *9 (collecting police misconduct cases ranging in punitive damages from $157,603.29 to $379,131,68, adjusting for inflation, and further assessing the various awards individually instead of the higher composite number); *Lewis*, 547 F. Supp. 2d at 210 ("this jury's $200,000 award of punitive damages is not so grossly excessive as to shock the judicial conscience") (citations omitted); *Greenaway v. County of Nassau*, 327 F. Supp. 3d 552, 571 (E.D.N.Y. 2018) (upholding the jury's award of $100,000 per officer and citing cases affirming awards of $278,000, $200,000, and other six-figure amounts, after adjusting for inflation).

30

**CONCLUSION**

This Court should deny Defendants' motion in its entirety and enter a final judgment.

Dated:  New Paltz, New York
         April 13, 2020

Respectfully submitted,

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, N.Y. 12561
(845) 469-1277

Michael Diederich

Diederich Law Office
361 Route 210
Stony Point, N.Y. 10980
(945) 942-0795

*Counsel for Plaintiff*

31